# BARCLAY vs. HENDERSON ET AL.

[BILL IN EQUITY, BY WIDOW AGAINST HEIRS OF HUSBAND, PRAYING DIVESTI-
TURE OF TITLE OUT OF HEIRS TO CERTAIN LANDS, OF WHICH HUSBAND DE-
CLINED TO TAKE MARITAL POSSESSION, THE MERE LEGAL TITLE BEING IN
HIM, AND RECEIVED BY THE HUSBAND, DURING MARRIAGE, IN EXCHANGE FOR
OTHER LAND BELONGING TO THE WIFE, IN 1839, BEFORE HER MARRIAGE.]

1. *Marital possession; what amounts to an abandonment of.*—A man who
married in this State before 1842, and declined to take marital posses-
sion of the wife's estate during his coverture, but left the same under
her control, and declared that the same belonged to her and not to
him, up to the day of his death in 1862, waived and abandoned his
marital rights over her estate.
2. *Same; when equity will interfere to remove cloud from title.*—In such a
case, on the death of the husband, the right of the wife revives, and
equity will interfere to remove a cloud from the title of her land, unin-
tentionally occasioned by the husband and wife in adjusting the deed
of conveyance, on an exchange of one tract of land for another tract
for her benefit.

APPEAL from Chancery Court of Talladega.
Heard before Hon. B. B. McCRAW.

The bill in this case was dismissed, " upon motion of re-
spondents, for want of equity," on the eleventh day of Feb-
ruary, 1869, before the cause was brought to issue upon
the merits. It was filed on the twentieth day of May, 1867,
in the chancery court of Talladega county, by Mrs. Marga-
ret A. Barclay, " as executrix and legatee under the will of
George P. Brown, deceased," against the heirs-at-law of
said Brown and others, as defendants. From this decree
of dismissal, Mrs. Barclay appealed to this court, and
here assigns the dismissal for error.

The allegations of the bill show that Mrs. Barclay was
the widow of said George P. Brown, deceased, and that
by his last will, he made her, at his death, the sole legatee
of his estate, for and during her natural life. Brown died
on the eighteenth day of September, 1839, in this State,
and his will was duly proven and admitted to record in

said county of Talladega, and his widow, now Mrs. Barclay, was appointed, as required by law, administratrix with the will annexed of his estate, and as such took possession of his estate. At the time of Brown's death he owned and possessed a lot of land in the town of Talladega in this State, on which he resided at his death, and for which he had paid a part of the purchase-money, leaving a balance still unpaid. This lot was purchased from William P. Chilton, who was the uncle of Mrs. Barclay, and who retained the legal title to said lot in himself. This lot was considerably improved by Brown, before his death, and he left his wife, this complainant, in possession of it at his death. After Brown's decease, and the administration on his estate by complainant, she intermarried with Hugh G. Barclay.

After this marriage, Mrs. Barclay, her husband, and said Chilton, agreed with her to exchange certain other lots of land in said town of Talladega with her for the lot left her by her first husband, Brown, at his death, and Chilton was to pay Barclay, her second husband, for her, the sum of $1,600. This sum was the difference in value between the lots so agreed to be exchanged. This exchange was carried into effect, and Chilton paid Barclay, for complainant, the sum of $1,600, above mentioned. Under this exchange Mrs. Barclay took posession of the lots thus obtained. This occurred in the year 1842. Afterwards, Chilton, without any request from Mrs. Barclay, and without her knowledge or consent, made a deed of conveyance to the lots thus exchanged with him by Mrs. Barclay, to her husband, said Hugh G. Barclay. This deed was intended to operate for the benefit of Mrs. Barclay, who was then a married woman, and the wife of said Hugh G. Barclay. Mrs. Barclay was then incapable of holding the legal title to said lots of land, and expected that her husband, said Barclay, would provide by deed or otherwise so that she might hold said lots free from all claims of said Hugh G. Barclay and his creditors. Said deed was so made by said Chilton, of his own will, and not by or from any suggestion on the part of the said Hugh G. Barclay, or of his said wife. Ever after said exchange, complainant claimed said lots as

her own property, and her husband, said Barclay, never made any claim of any kind thereto, but always recognized and spoke of the same as the property of his wife, up to his death, which happened suddenly and unexpectedly on the 17th day of September, 1862, affording him no opportunity of making a will or placing the title of said lots out of himself for the benefit of complainant. Said Barclay, said husband, had no claim on said lots, and held the same only by the naked legal title obtained as abovesaid from said Chilton.

The bill also alleges that Barclay made some improvements on the lots above mentioned, but that the cost of such improvements would be fully compensated by the occupation thereof by said Barclay, in conjunction with complainant for about twenty years, and by the sixteen hundred dollars which he had received from said Chilton, for complainant, on the exchange of said lots. It does not appear that there are any creditors of Barclay who contest Mrs. Barclay's right. The relief sought is such as is appropriate to the case made by the facts.

CHILTON & THORINGTON, for appellant,
TAUL BRADFORD, contra.

PETERS, J., (after stating facts as above.)—Upon a motion to dismiss for want of equity, the allegations of the bill are all admitted to be true. They are to be taken as facts, and complainant is entitled to the benefit of every legitimate conclusion that may be reasonably drawn from them.

At the death of Brown, his wife, now Mrs. Barclay, under the limitations of his will, became the owner of his estate just as he had owned it before his death. But upon her marriage with Barclay, her right to her personal estate was transferred to him by the effect of the marriage, and the use of her real estate passed in the same way, if she chose to assent to this, acquiescing in his possession without objection, and he chose to exert his right under the marriage. If, however, she did not choose so to acquiesce, she might, by bill in equity, compel the husband, before taking

possession of her personal assets, to make provision and settlement for her benefit. But the husband was not bound to take possession of his wife's personal property or the rents of her land. He might, if he chose, decline to do either, and leave her estate with her, upon a dissolution of the marriage, as he found it on the first consummation of the marriage. If he and she assent to this, and act upon it during their whole marital life, it can not be said that he has ever acted upon his right to take possession of her property and hold it as his own, to the extent of his rights by marriage, during the coverture. If he does not do this, upon his death, her rights revive as they existed before the marriage, and the husband will be treated as he considered himself, and as she considered him, as her trustee of her estate in his hands at his death.—*Hawkins v. Coalter*, 2 Por. 436; *Andrews & Bro. v. Jones*, 10 Ala. 400, 401; *Marsh v. Marsh*, June term, 1869; *Robison v. Robison*, January term, 1870.

The allegations of this bill show such a case. The husband declined to take marital possession of his wife's estate from his marriage to his departure from this life. He acted solely as her trustee. This was his intent and purpose, and she acquiesced in it throughout their marriage life. It would be a fraud upon her to permit this purpose to be defeated.

The bill was, therefore, properly filed, and there was sufficient equity to sustain it. It was improperly dismissed. The decree of dismissal is reversed, and the cause is remanded for further proceedings in the chancery court in conformity with this opinion, and in accordance with the law.

And the appellees in this court will pay the costs of this appeal in this court and in the court below.